IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:22-cv-00039

| | |
|---|---|
| **JOY RAZO,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| **KILOLO KIJAKAZI, Acting** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure [Doc. 9] and the Defendant's Motion for Summary Judgment [Doc. 10].

**I.    BACKGROUND**

On June 25, 2020, the Plaintiff, Joy Razo ("Plaintiff"), filed an application for disability insurance benefits under Title II of the Social Security Act (the "Act"), alleging an onset date of March 19, 2020. [Transcript ("T.") at 16].  On the same date, the Plaintiff filed an application for supplemental security income under Title XVI of the Act, again alleging an onset date of March 19, 2020.  [T. at 350].  The Plaintiff's claim was initially

denied on November 13, 2020, and upon reconsideration on January 11, 2021. [T. at 127, 180]. Upon the Plaintiff's request, a hearing was held on August 9, 2021, before an Administrative Law Judge ("ALJ"). [T. at 16]. On August 20, 2021, the ALJ issued a written decision denying the Plaintiff benefits, finding that the Plaintiff was not disabled within the meaning of the Act since the alleged onset date of March 19, 2020. [T. at 26]. The Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. at 1-4]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional

3

investigation and explanations." Mills v. Berryhill, No. 1:16-cv-25-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citing Radford, 734 F.3d at 295).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to

4

step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. Social Security Ruling 96-8p; 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 634. If the claimant can still perform his or her past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At

5

step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering her burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date, March 19, 2020. [T. at 18]. At step two, the ALJ found that the Plaintiff has severe impairments including: "obesity, tachycardia, polyneuropathy in both feet, diabetes, hypertension, depressive/bipolar disorder, schizoaffective disorder, and post-traumatic stress disorder (PTSD)." [Id.]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [Id.]. The ALJ then determined that the Plaintiff, notwithstanding her impairments, has the RFC:

6

> [T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with exceptions. The claimant can never climb ladders, ropes, or scaffolds. He[1] can sit/stand hourly on task. He can never work around hazards; and tolerate no more than occasional environmental factors such as odors, fumes, or irritants)[sic]. He can perform unskilled work of a routine, repetitive nature with reasoning of 1 or 2 in 2-hour segments; perform non-production pace, non conveyor/automated pacing; tolerate infrequent changes in work setting or routine; never interact with the public; frequently interact with supervisors and co-workers; never perform teamwork/tandem work; and never perform conflict resolution or crisis management.

[Id. at 22].

At step four, the ALJ found that the Plaintiff was unable to perform any past relevant work. [Id. at 24]. At step five, based upon the testimony of the vocational expert ("VE"), the ALJ concluded that, considering the Plaintiff's age, education, work experience, and RFC, the Plaintiff is capable of performing jobs that exist in significant numbers in the national economy, including silverware wrapper, price marker, and packager. [Id. at 25]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from March 19, 2020, the alleged onset date, through August 20, 2020, the date of the decision. [Id. at 26].

---

[1] The Court notes that the ALJ incorrectly refers to Ms. Razo as "he" in this and other parts of the decision.

7

## V.   DISCUSSION[2]

As her sole assignment of error, the Plaintiff argues that the ALJ failed "to reconcile the opinion evidence he relied upon in formulating [the Plaintiff's] RFC" and, consequently "excluded limitations provided by the record" without any discussion or explanation for doing so. [Doc. 9-1 at 5]. Specifically, the Plaintiff notes the inconsistency between the opinion of the psychological consultative examination (PE) and the RFC determination. [Doc. 9 at 4]. The ALJ found that the Plaintiff could perform unskilled work up to Reasoning Level 2, defined as the ability to "carry out detailed but uninvolved written or oral instructions,"[3] but the opinion of the PE stated that the Plaintiff "can understand, retain, and follow simple instructions though had some trouble when the instructions changed." [Id.]. The Plaintiff argues that the ALJ's failure to discuss or explain why his RFC finding excluded limitations established by the record constituted error because it leaves the reviewing court left to guess about how the ALJ arrived at his conclusions. [Id. at 5].

---

[2] Rather than set forth the relevant facts in a separate section, the Court has incorporated the relevant facts into its legal analysis.

[3] The Dictionary of Occupational Titles ("DOT") defines Reasoning Level 2 as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." 1991 WL 688702.

8

An "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 61 Fed. Reg. at 34,478. "Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019).

When a plaintiff's claim is based in whole or in part on mental health impairments, the Social Security Rules and Regulations (the "Regulations") require an in-depth review and analysis of the plaintiff's mental health history. The Regulations set forth a mechanism for this review and documentation, known as the "special technique," to assist ALJs in assessing a claimant's mental RFC. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The special technique "requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders [L]istings." SSR 96-8p, 61 Fed. Reg. at 34,447. Paragraph B of the Listings provides the functional criteria assessed, in conjunction with a rating scale, to evaluate how a claimant's mental disorder limits her functioning. These criteria represent the areas of mental functioning a person uses in the performance of gainful activity. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A.

The paragraph B criteria include restrictions in activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. Id. The ALJ uses the special technique to "evaluate the severity of mental impairments . . . when Part A of the Listing of Impairments is used." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The special technique is performed as follows:

> Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s) .... If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e) of this section.

Id. §§ 404.1520a(b)(1), 416.920a(b)(1). Thus, "[t]he regulation specifically provides that the ALJ must document all of the special technique's steps." Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 659 (4th Cir. 2017) (citing 20 C.F.R. § 404.1520a(e)(4)).

In addition to following the special technique, an ALJ must formulate the RFC in light of a claimant's physical and mental impairments. Rule 96-8p provides:

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to

> rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].

SSR 96-8p, 61 Fed. Reg. at 34,477.

Here, the ALJ failed to conduct a function-by-function analysis of the Plaintiff's mental health limitations and work-related abilities prior to expressing his RFC assessment. [See T. at 22]. At step three, the ALJ determined that the Plaintiff's mental impairments did not meet or medically equal the paragraph B criteria included in Listings 12.03 (schizophrenia spectrum and other psychotic disorders), 12.04 (depressive, bipolar, and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). [Id. at 21]. The ALJ based this conclusion on findings regarding the Plaintiff's limitations with understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing themselves. [Id. at 22]. Nonetheless, the ALJ found that the Plaintiff has at least moderate limitations in all areas of mental functioning. [Id.]. These findings indicate that there are limitations on the

11

Plaintiff's ability to carry out some of the areas of mental functioning listed in paragraph B. The ALJ then noted:

> The limitations identified in the "paragraph B" criteria are not a residual functioning capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental functional analysis.

[Id.].

In formulating the Plaintiff's RFC, however, the ALJ failed to explain whether the Plaintiff's moderate limitations translated to any actual functional limitations. Specifically, it appears the ALJ sought to account for the Plaintiff's moderate limitations with understanding, remembering, or applying information by stating, in the RFC, that the Plaintiff: "can perform unskilled work of a routine, repetitive nature with reasoning of 1 or 2 in 2-hour segments." [Id.]. Notably, under the Dictionary of Occupational Titles ("DOT"), jobs with Reasoning Level 2 require an individual to carry out

detailed instructions. See DOT, App'x C, § III, 1991 WL 688702.[4]  While an ALJ need not "always include moderate limitations in [mental functioning] as a specific limitation in the RFC," an ALJ must explain why a mental limitation accounts for a claimant's moderate limitations as evidenced in the record. Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020).

Here, the ALJ determined that the Plaintiff's RFC limited her to work requiring at most Reasoning Level 2, but offered no explanation for how that limitation accounted for the Plaintiff's moderate limitations with understanding, remembering, or applying information.  Instead, the ALJ's decision provides a general discussion of the Plaintiff's reported symptoms and the evidence of record and then summarily concludes that the RFC was "supported by the DDS opinion in part, findings at the PE, and the claimant's medical records."  [T. at 24].  Further, the ALJ does not cite any medical expert opinion supporting his determination that the Plaintiff could perform work requiring Reasoning Level 2.  In fact, the medical expert opinions relied upon by the ALJ in formulating the RFC support a contrary mental RFC determination, and the ALJ fails to resolve this conflict. [T. at 19, 24, 98, 120,

---

[4] The Dictionary of Occupational Titles ("DOT") defines Reasoning Level 2 as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." 1991 WL 688702.

13

137]. Specifically, the ALJ found the psychological consultant's and Disability Determination Service ("DDS") consultant's mental assessment opinions persuasive. [T. at 19]. However, both the PE and the DDS opined that the Plaintiff "can understand, retain, and follow simple instructions though had some trouble when the instructions changed."[5]  [T. at 19]. Further, the ALJ fails to reconcile the PE's and DDS's opinions that the Plaintiff is limited to simple instructions, with the ALJ's findings that the Plaintiff could perform work requiring Reasoning Level 2, which entails "carrying out detailed but uninvolved written or oral instructions." [T. at 19]; DOT, App'x C, § III, 1991 WL 688702.  The attempt to account for the Plaintiff's moderate limitations by limiting the RFC to Reasoning Level 2 is erroneous because the ALJ did not provide the required explanation as to the inconsistency between the limitation identified in understanding and memory to simple instructions documented by the medical expert opinions, and the ultimate non-adoption of such limitations in the RFC.  See Shinaberry, 952 F.3d at 121 (quoting Mascio, 780 F.3d at 633, 637-38).

---

[5] The DDS consultant found that the Plaintiff "would be able to understand and retain simple instructions."  [T. at 98, 120].  Similarly, the PE found that "[s]he could likely for the most part understand and follow simple instructions, does have difficulty when instructions keep changing, [and] may be able to sustain attention to perform a simple repetitive task."  [T. at 109].  The psychological consultant at the reconsideration level opined that the Plaintiff "is capable of understanding and retaining simple instructions, . . . [but] focus may be disrupted at times due to psychiatric symptoms, [and the Plaintiff] may tend to have trouble with more complicated, detailed directions."  [T. at 137].

14

The ALJ's failure to reconcile his disparate findings between his assessment of the medical opinions and his RFC determination leaves the Court to "guess" as to how the ALJ reached his conclusions. Further, the discrepancy between the ALJ's findings and conclusions in the RFC is not a harmless error. The hypothetical posed to the vocational expert resulted *only* in available jobs with Reasoning Level 2.[6] [T. at 22]. An RFC incorporating the limitation to only Reasoning Level 1—including the Plaintiff's inability to handle changing instructions—would seem to eliminate all of the jobs suggested by the VE. [T. at 22, 25]. Therefore, this matter must be remanded for further consideration and findings.

## VI. CONCLUSION

Because this Courts lacks an adequate record of the basis for the ALJ's decision, it cannot conduct a meaningful review of that ruling. See Radford, 734 F.3d at 295. On remand, the ALJ should conduct a proper function-by-function analysis of the Plaintiff's exertional and non-exertional limitations, narratively discussing all the relevant evidence, and specifically explaining how he reconciled that evidence to his conclusions.

---

[6] The available jobs identified by the vocational expert were silverware wrapper (318.687-018), price marker (209.587-034), or packager (222.687-022). [T. at 25]. All three of these jobs require Reasoning Level 2. See DOT, 1991 WL 672757; 1991 WL 671802; 1991 WL 672133.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 9] is **GRANTED** and the Defendant's Motion for Judgment for Summary Judgment [Doc. 10] is **DENIED**. Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion.

**IT IS SO ORDERED.**

_____

Martin Reidinger
Chief United States District Judge